UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM GILHAUS, et al.,

                Plaintiffs,

v.                                                Case No. 15-2619-JAR

GARDNER EDGERTON UNIFIED SCHOOL
DISTRICT NO. 231, et al.,

                Defendants.

## ORDER

This employment action is before the court on the motion of non-party Donna Whiteman for a protective order and/or to quash subpoena (ECF doc. 97). Specifically, Ms. Whiteman, an attorney employed by the Kansas Association of School Boards ("KASB"), seeks an order quashing the deposition subpoena served on her by plaintiffs, primarily on the basis of Ms. Whiteman's asserted role as counsel for defendant Gardner Edgerton Unified School District No. 231 ("USD 231"). For the reasons set forth below, the motion is denied.

### I.    Background

Plaintiffs filed this action against their former employer, defendant USD 231, and defendants Rob Shippy, Brad Chandler, Tresa Boden, Mary Nelson, and Pam Stranathan, in their individual capacities, based on plaintiffs' termination of employment.[1] Among other claims, plaintiffs assert that they were ousted from employment during an illegal

---

[1] ECF doc. 1.

"special" meeting of the Board of Education on February 27, 2014, at which defendants Shippy, Chandler, Boden, and Nelson voted in favor of plaintiffs' termination.[2]

On July 13, 2016, Aly Pack, on behalf of plaintiffs, contacted Ms. Whiteman via email requesting dates available prior to the August 22, 2016 discovery deadline to depose Ms. Whiteman "about policies and procedures for Board Members as set by KASB."[3] The email further provided: "[w]e do understand that you will unable [sic] to speak about any privileged information, and [plaintiffs' counsel] will be sure to cover only non-privileged manners [sic]."[4] Receiving no response, Ms. Pack renewed the request, via email, on July 19, 2016.[5]

On July 25, 2016, Gregory Goheen, counsel for Ms. Whiteman, responded to the email, advising of his representation of Ms. Whiteman and seeking more detail on the information sought by plaintiffs.[6] Although counsel for plaintiffs and Ms. Whiteman agree they conversed later that day, they characterize the conversation somewhat differently. According to Mr. Goheen:

> "counsel for [p]laintiffs and Ms. Whiteman briefly discussed the fact that Ms. Whiteman, as counsel for [d]efendant USD No. 231, could not testify regarding her communications with her client absent a waiver from

---

[2] *Id.*

[3] ECF doc. 97-2.

[4] *Id.*

[5] ECF doc. 97-3.

[6] ECF doc. 97-4.

2

> [d]efendant USD No. 231. Counsel for [p]laintiffs acknowledged this but indicated that he still wanted to depose Ms. Whiteman as a 'fact' witness."[7]

But Dennis Egan, plaintiffs' counsel, represents that Mr. Goheen "expressed complete satisfaction" with Mr. Egan's explanation of the scope of the deposition, discussed providing available deposition dates, and offered his Kansas City, Kansas office for the deposition "'to save everyone a trip to Topeka.'"[8]

Following this conversation, Ms. Pack emailed Mr. Goheen's office inquiring as to Ms. Whiteman's availability on August 9-11.[9]   Karen Brokesh responded that Mr. Goheen would be out of the country until August 19, 2016, and requested dates after that time.[10]   Still later that day, July 25, 2016, Ms. Pack inquired whether another attorney within Mr. Goheen's firm was available to present Ms. Whiteman for her deposition in light of the discovery deadline.[11]   Receiving no response, Ms. Pack sent another email to Mr. Goheen's office on July 27, 2016, to determine whether Ms. Whiteman's deposition could be scheduled for August 10 or 11.[12]   On July 27, 2016, Ms. Brokesh responded, via email, that Ms. Whiteman and Mr. Goheen both were unavailable on August 10 and 11,

---

[7] ECF doc. 97.

[8] ECF doc. 114.

[9] ECF doc. 97-5.

[10] ECF doc. 97-6.

[11] ECF doc. 97-7.

[12] *Id.*

and further provided: "[t]his is a very busy time of year for Ms. Whiteman and her schedule is booked with many commitments before school starts. We are hoping to have some available dates to circulate soon."[13]

On August 1, 2016, plaintiffs served Ms. Whiteman with a deposition subpoena.[14] Ms. Whiteman seeks to quash the subpoena on the grounds that the subpoena seeks testimony that invades the attorney-client privilege and work-product protection, as well as her ethical obligations to her client, and that plaintiffs cannot satisfy the heightened "*Shelton*" standard governing depositions of opposing counsel. Additionally, Ms. Whiteman claims that the subpoena seeks opinion testimony from a non-retained expert, commands Ms. Whiteman to appear on a date when she and her counsel are unavailable, and was served without tendering the appropriate witness and mileage fee.

Plaintiffs counter that Ms. Whiteman is not "opposing counsel" and the "*Shelton*" criteria is therefore inapplicable, that they seek only factual, non-privileged testimony, and that a witness fee in the amount of $50.00 was tendered to Ms. Whiteman.[15]

---

[13] ECF doc. 97-8.

[14] ECF doc. 95-1. Though not referenced in Ms. Whiteman's motion, on August 5, 2016, Ms. Pack emailed Mr. Goheen, acknowledging Mr. Goheen's prior indication that he was unavailable on August 11, 2016, seeking additional dates prior to the close of discovery for Ms. Whiteman's deposition, and referencing a letter served with the subpoena similarly indicating that plaintiffs' counsel "would try [their] best to accommodate schedules prior to the close of discovery." ECF doc. 114-5.

[15] ECF doc. 114.

4

**II.      Motion to Quash**

### a.  Duty to Confer

As an initial matter, the court is not satisfied that counsel for Ms. Whiteman "has conferred or has made reasonable effort to confer" with plaintiffs' counsel prior to filing the instant motion as required by D. Kan. Rule 37.2.  Prior to filing the motion, Ms. Whiteman's counsel did nothing more than alert plaintiffs' counsel that Ms. Whiteman possessed privileged information—a notion not disputed by plaintiffs. Indeed, this motion appears to be the first instance in which Ms. Whiteman's counsel challenges the deposition in its entirety.  Moreover, Ms. Whiteman's claim that the deposition was "unilaterally noticed for a date/time when [p]laintiffs were previously advised that Ms. Whiteman and her counsel were unavailable"[16] is materially inaccurate in light of the fact that the subpoena was served with a letter indicating plaintiffs' counsel's flexibility with respect to the deposition date.[17]  Nevertheless, given the procedural posture of this case, and the stances taken in the parties' respective briefing, the court will decide the motion on the merits.

### b.  Depositions of Opposing Counsel

The decision to enter a protective order is within the court's discretion.[18]  Under Rule 26(c)(1) of the Federal Rules of Civil Procedures, a court may, upon a showing of

---

[16] ECF doc. 97.

[17] *See* FN 14.

[18] *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995).

5

good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Additionally, under Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure, the court "must quash or modify a subpoena that … requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden."[19]  The party seeking a protective order or to quash a subpoena has the burden to demonstrate good cause and/or the existence and applicability of any privilege asserted.[20]

While the Federal Rules of Civil Procedure do not prohibit depositions of opposing counsel, courts have recognized the potential for abuse in such depositions "'by 'inviting delay, disruption of the case, harassment, and unnecessary distractions into collateral matters.'"[21]  In what's regarded as a leading case, *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), the Eighth Circuit Court of Appeals held that depositions of opposing counsel should be limited to circumstances "where the party seeking to take the deposition has shown that (1) no means exist to obtain the information other than to depose opposing counsel; (2) the information sought is relevant and

---

[19] Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv).

[20] *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 630 (D. Kan. 2000) (citing *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996)).

[21] *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2016 WL 344726, at *2 (D. Kan. Jan. 28, 2016) (quoting *Buth v. AAA Allied Grp. Inc.*, No. 12-1223, 2013 WL 1308543, at *1 (D. Kan. Mar. 28, 2013)).

nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton* has been adopted by the Tenth Circuit.[22]

Of course, Ms. Whiteman is not counsel of record in this lawsuit.  But she argues that she should be deemed "opposing counsel" for purposes of applying the heightened *Shelton* criteria because she "serves as legal counsel" for defendant USD 231.[23]  Ms. Whiteman claims that her employer, the KASB, is an organization under contract to perform legal services for its member school districts, including USD 231.  Ms. Whiteman alleges that she had communications with USD 231 "where legal advice was sought with regard to various matters," that "she provided such professional advice in her capacity as [an attorney with the KASB] to a member and client school district," and that the "relevant communications related to that purpose were made in confidence by the district and its board members with the expectation that such communications would be maintained in confidence by Ms. Whiteman."[24]  Ms. Whiteman's counsel consulted defendant USD 231's counsel (David Cooper) upon receipt of the subpoena, and defense counsel indicated that USD 231 does not intend to waive any privilege or duties of confidentiality owed by Ms. Whiteman.[25]

---

[22] *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1112 n.15 (10th Cir. 2001) ("*Shelton* was adopted by this court in *Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995)").

[23] ECF doc. 97.

[24] *Id.*

[25] ECF doc. 97-1.

Plaintiffs argue that Ms. Whiteman should not be deemed "opposing counsel" because she is not involved in litigating this case and does not in fact "serve as legal counsel" for defendant USD 231.  Identifying Curtis Tideman and Joe Hatley[26] as defendant USD 231's current and former "legal counsel," respectively, plaintiffs argue that although Ms. Whiteman happens to be a lawyer, her title with the KASB is Assistant Executive Director of Legal Services. Plaintiffs assert that in addition to employing lawyers whom members can consult, the KASB provides generic associational programs and services to school districts relating to governance, school improvement, elections, legal powers, board meetings, policy, superintendent board relations, superintendent selection, and budget. As relates to this case, plaintiffs claim Ms. Whiteman presented and authored content distributed at the Spring 2013 "New Board Member Workshop" training, which was attended by individual defendants Rob Shippy and Brad Chandler. Plaintiffs argue that during the training, Shippy and Chandler "learned (or should have learned) the limitations on their power and authority as newly-elected USD 231 Board members."[27] Plaintiffs note the document "embod[ying] the actual … presentation" is a publically available document and the presentation was "open."[28]

---

[26] Plaintiffs note that Mr. Hatley, through counsel, has not challenged being deposed in this matter.

[27] ECF doc. 114.

[28] ECF doc. 114-4.  Plaintiffs additionally refer to a document entitled "2013 Guide to Boardsmanship," which provides that it is a publication of the KASB "not intended to provide legal advice." ECF doc. 114-2.

Plaintiffs seek to depose Ms. Whiteman with respect to (1) boardsmanship training, its history and purposes; (2) Ms. Whiteman's knowledge of specific "boardsmanship" topics she presented, or written training topics she authored or approved; (3) Ms. Whiteman's factual recollections, if any, regarding a possible consultation with Shippy, Nelson and/or Boden prior to the scheduling of the February 27, 2014 board meeting at which plaintiffs were terminated.[29]

In her reply brief, Ms. Whiteman reasserts her privilege claim insofar as members of the Board of Education for defendant USD 231 have testified regarding specific instances in which they sought the advice of Ms. Whiteman as a KASB attorney, but she seems to abandon any such assertion as it would relate to "a seminar put on by Ms. Whiteman" and attended by defendants.[30]

The court is not persuaded the *Shelton* criteria governing depositions of opposing counsel should be applied to the unique circumstances of this case. The purpose of the heightened standard is to prevent delay, disruption, harassment, or unnecessary distractions into collateral matters. Those concerns do not factor here. Ms. Whiteman is not an attorney of record in this case, and concedes she has no involvement in litigating this action. Though there are conflicting interpretations of Ms. Whiteman's role as counsel for defendant USD 231, it appears her relationship with defendant USD 231

---

[29] Plaintiffs refer to the deposition testimony of Shippy, Nelson, and Boden indicating that they consulted Ms. Whiteman or Lori Church before they scheduled the February 27, 2014 Board meeting.

[30] ECF doc. 118.

through the KASB is multi-faceted.  Finally, it is worth noting that although defendant USD 231 has indicated it does not intend to waive attorney-client privilege with respect to Ms. Whiteman, it has not separately sought to quash the deposition in its entirety or joined in Ms. Whiteman's motion.

Even were the court to apply the heightened *Shelton* standard for depositions of opposing counsel, the court finds plaintiffs have satisfied all three relevant factors. Plaintiffs have established they are seeking crucially relevant information. The training provided by Ms. Whiteman to individual defendants with respect to their power and authority as board members, and any consultations regarding the events surrounding plaintiffs' terminations, are highly relevant to plaintiffs' claim that they were terminated from employment during an illegal "special" meeting of the Board of Education.  Given Ms. Whiteman's direct involvement, and the failure of other discovery conducted thus far to provide complete information with respect to either topic, Ms. Whiteman appears to be the best, if only, source of the information sought.  Of course, as plaintiffs have acknowledged from the outset of this dispute, Ms. Whiteman may possess privileged or other protected information, especially as it relates to communications with individual board members surrounding plaintiffs' terminations.  Any specific rulings as to Ms. Whiteman's privilege and work product assertions, given the current state of the record, would be premature.  So, plaintiffs' counsel may explore background facts concerning the privilege, and Ms. Whiteman can substantiate any objections, at the deposition, to the extent appropriate.

To guard against overly aggressive assertions of attorney-client privilege or work-product protection during Ms. Whiteman's upcoming deposition, and hopefully to avoid further delay and expense, the court respectfully reminds the parties and counsel that case law in this district provides a wealth of guidance as to what is–and is not–protected. With respect to the attorney-client privilege, it is important to note first that "personal, confidential, [or] private information" is not necessarily privileged.[31]  As this court has held repeatedly, "confidential" does not equate to "nondiscoverable" or "privileged."[32] Second, it is clear that "[u]nderlying facts are not protected by the privilege."[33] "Similarly, neither the acts or services performed by an attorney during the course of his representation, nor the scope of representation, are within the attorney-client privilege because they are not 'communications.'"[34]  Nor are "general topics of attorney-client discussions" or ultimate "legal conclusions" of counsel protected.[35]

---

[31] *AKH Co., Inc. v. Universal Underwriters Ins. Co.*, No. 13-2003, 2014 WL 2760860, at *7 (D. Kan. June 18, 2014).

[32] *Id.* (quoting *Williams v. Evogen, Inc.*, No. 12-2620, 2013 WL 3773840, at *3 (D. Kan. July 17, 2013)).

[33] *Sprint Commc'ns Co., L.P., v. Comcast Cable Commc'ns, LLC,* Nos. 11-2684, 11-2685, 11-2686, 2014 WL 545544, at *4 (D. Kan. Feb. 11, 2014) (quoting *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200, 2006 WL 1867478, at *10 (D. Kan. July 1, 2006)).

[34] *Id.* at *6 (quoting *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005)).

[35] *Id.* (holding that counsel's ultimate legal conclusion that defendants infringed patent was not the type of substantive communication protected by the attorney-client privilege).

Case law from this district also provides direction about the scope of work-product protection.   This court has explained that "the doctrine is not intended to protect investigative work unless done so under the supervision of an attorney in preparation for the real and imminent threat of litigation or trial."[36]  "Although certain actions by an adverse party, such as submitting a reservation of rights letter, might be considered precursors to litigation, the work product doctrine requires more than a mere possibility of litigation."[37] Finally, the parties are directed to review the extensive analysis of when a document is "prepared in anticipation of litigation" set out by U.S. Magistrate Judge Gerald L. Rushfelt in *Marten v. Yellow Freight System, Inc.*[38]

### c.  Expert Opinion

Under Federal Rule of Civil Procedure 45(d)(3)(B)(ii), a court "may … quash or modify [a] subpoena if it requires … disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."   Relying on the notion that non-privileged factual information is "available from other sources," Ms. Whiteman argues the "real information sought" must be her expert legal opinions.[39]  The court flatly rejects

---

[36] *Id.*

[37] *AKH Co., Inc.*, 2014 WL 2760860, at *2 (quoting *McNabb v. City of Overland Park*, No. 12-2331, 2014 WL 1152958, at *8 (D. Kan. March 21, 2014)).

[38] No. 96-2013, 1998 WL 13244, at *10-11 (D. Kan. Jan. 6, 1998).

[39] ECF docs. 97 and 118.

this argument.  The record demonstrates plaintiffs only seek "facts and events."  The court therefore declines to quash Ms. Whiteman's deposition on this basis.

### d.  Fees and Mileage

Although Ms. Whiteman's motion seems to suggest she has received no witness and mileage fee at all, the proof of service indicates that $50.00 was tendered to Ms. Whiteman with the subpoena.[40]  In her reply brief, Ms. Whiteman claims the amount is insufficient based on the approximate 140-mile distance between Kansas City, Missouri, where the deposition is scheduled to take place, and Topeka, Kansas, Ms. Whiteman's place of work.

Under Federal Rule of Civil Procedure 45(b)(1), a subpoena requiring a person's attendance at deposition must be served with the fees for one day's attendance and the mileage allowed by law.  The relevant statute establishes the witness fee as $40 per day.[41] The current mileage allowance rate is $0.54 per mile.[42]  Plaintiffs are directed to tender the appropriate mileage fee to Ms. Whiteman prior to the deposition.

### e.  Award of Attorneys' Fees

Ms. Whiteman seeks an award of attorneys' fees incurred in filing the instant motion.  In their response, plaintiffs request attorneys' fees incurred in having to respond

---

[40] ECF doc. 95-1.

[41] 28 U.S.C. § 1821(b).

[42] *See* 28 U.S.C. § 1821(c)(2); http://www.gsa.gov/portal/content/100715 (last reviewed 09/07/16).

to the instant motion. The court does not find attorneys' fees to be warranted and, therefore, both requests are denied.

IT IS THEREFORE ORDERED that Ms. Whiteman's motion to quash is denied. Her deposition shall proceed at a mutually convenient time on or before **September 22, 2016**, subject to plaintiffs' tender of an appropriate mileage fee.[43]

Dated September 8, 2016, at Kansas City, Kansas.

  s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[43] The court finds any challenges with respect to the scheduling of Ms. Whiteman's deposition to be moot.

14